**Opinion issued January 23, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-12-00601-CR**

————————————

**FRANCISCO J. CASTREJON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1787812**

---

## O P I N I O N

A jury convicted appellant, Francisco J. Castrejon, of the Class B misdemeanor offense of prostitution.[1] The trial court assessed punishment at ten

---

[1] *See* TEX. PENAL CODE ANN. § 43.02(a)(1) (Vernon Supp. 2013).

days' confinement in the Harris County Jail and a $500 fine. In one issue, appellant contends that the trial court erroneously admitted a recorded conversation held partly in Spanish and partly in English without proper notice that the State intended to introduce this recording and without a written transcript from a licensed translator.

Specifically, appellant contends that the trial court erred in admitting the recording of a conversation he held partly in Spanish with the arresting officer, Officer G. Das, because, under Texas Rule of Evidence 1009(a), the State was required to give forty-five days' notice that it intended to use the recording as evidence at trial and to submit a contemporaneous written English translation prepared by a certified translator, and the State failed to do so. He also contends that, because of this failure, his defense counsel was unable to request that the trial court appoint an interpreter pursuant to Code of Criminal Procedure article 38.30 to submit a translation of the recording. He further contends that Officer Das was not qualified to render an accurate English translation of the conversation.

Concluding that appellant has misconstrued the law, we affirm.

## Background

Houston Police Department ("HPD") Vice Division Officer Das was working undercover on Bissonnet Street in southwest Houston on October 17, 2012, in an attempt to combat the prostitution problem in the area. Officer Das

2

posed as a prostitute and maintained a telephone connection with her backup officers underneath her clothing to record any conversations that she had with individuals who propositioned her. Officer Das encountered appellant, who was driving along Bissonnet, and they negotiated payment for a sexual encounter to occur in a nearby parking lot. This conversation was recorded by audio recording. After Officer Das began to walk toward the parking lot and appellant started to follow her in his vehicle, the backup officers arrested appellant. No translation of the recording of the conversation between Officer Das and appellant, which was partly in English and partly in Spanish, was made prior to trial.

Appellant filed a pre-trial motion in limine in which he sought to exclude, among other things, "[a]ny reference to a conversation between persons if such conversation is contained in an audio recording that constitutes the best evidence of the conversation that transpired" and "[a]ny reference or attempt to translate any conversation between persons if such conversation was conducted in a foreign language, in whole or in part, except if such translation has been disclosed by the State, and served upon all parties, at least 45 days prior to the date of trial, upon the affidavit of a qualified translator pursuant to the Rules of Evidence." The trial court denied the first request and allowed the State to reference the conversation between Officer Das and appellant, but it granted the second request and required

the State to approach the bench before it discussed the audio recording of this conversation or attempted to translate it.

At trial, Officer Das testified that she is able to communicate with suspects who speak only Spanish. She testified that she has experience taking police reports in Spanish and questioning witnesses in Spanish and that, over the course of her twenty-year career in the Vice Division, she has dealt with Spanish-speaking suspects "quite frequently." She also stated that she has taken Spanish classes through HPD, and she characterized the type of Spanish that she speaks as "street Spanish," which is what many suspects who solicit prostitutes speak. Officer Das acknowledged that she is not fluent in Spanish, but she is "comfortable" speaking it, she is able to "get [her] point across and [she] can understand what people are saying to [her]" in Spanish.

Officer Das testified that she was walking along Bissonnet when appellant drove by in his car, "slowed his car down considerably," made eye contact with her, pulled into the next driveway, and parked his car in the parking lot. Appellant maintained eye contact with Officer Das, so she decided to approach his car. Officer Das testified that appellant called out to her in Spanish.

After the prosecutor asked Officer Das what happened next, defense counsel objected and asked to approach the bench. He argued that any answer to this question would "necessarily involve the witness' translation of a conversation that

4

took place in a foreign language," and he renewed his objection from his motion in limine to any reference to or attempt to translate any conversation in a foreign language because "[t]here is no certified interpreter that is present here today" and "[n]one has been disclosed to defense counsel." The trial court asked whether Officer Das was the one who had the conversation in Spanish with appellant, and, after the State responded that she was, the court overruled defense counsel's objection and allowed Officer Das to testify concerning the conversation.

Officer Das then testified that she and appellant exchanged pleasantries in Spanish, and she stated, in Spanish, what they said to one another. She stated that she informed appellant that she had a hotel room and that he asked her "how much?" She testified that she asked, "For what?" and she then stated the English translation for the two sex acts that she had offered to perform. She then specifically stated the Spanish words that she had used in the conversation with appellant and their English translations for the jury. She testified that appellant indicated, in Spanish, that he wished to have sexual intercourse with her, and she told him, also in Spanish, that that would cost $15. He repeated "fifteen" twice more during the course of their conversation. Appellant then suggested that they go to a nearby parking lot instead of a hotel room.

The State asked Officer Das whether an audio recording existed of this conversation, whether the recording was "in line with" Das' testimony, and

5

whether the recording was in English or Spanish. Officer Das affirmed that there was an audio recording and agreed that the recording was "in line with the verbal part of [their] conversation" and that the recording contained both English and Spanish. The State then offered the recording into evidence. The following exchange occurred:

| | |
|---|---|
| [Defense counsel]: | Judge, we renew our objection based on the Motion in Limine that any audio that is admitted into evidence without the proper certified interpreter would be a violation of not only Texas Rules of Evidence but my client's rights to confrontation. |
| The Court: | Okay. And you are not offering a transcript? |
| [The State]: | No, Your Honor. |
| The Court: | Simply the audio and her testimony regarding it; is that correct? |
| [The State]: | That's correct, Judge. |
| The Court: | Your objection will be overruled. |

No written English translation of the Spanish part of the audio recording was offered into evidence. The recording was not played for the jury at that time. Defense counsel did not object to admission of the recording on the basis that the State failed to give forty-five days' notice of its intent to introduce the recording, and he did not object on the basis that no English translation of the Spanish on the recording was offered; nor did he seek a continuance so that the Spanish portion of

6

the tape could be translated.  Moreover, he did not object at any time to Officer

Das' translation at trial.

During closing argument, the prosecutor indicated that he wished to play the

recording for the jury.  Defense counsel objected and the following occurred:

| | |
|---|---|
| [Defense counsel]: | Certainly, Judge, playing the tape that is in Spanish without a translation is going to confuse the jury.  We renew our objection as stated in the motion in limine.  There's been no transcript.  There's no translation to what is actually on this audio.  And I believe that if the jury heard it in the absence of any translation, they are just simply going to assume that whatever counsel is saying is on that tape. |
| The Court: | Officer [Das] testified about the authenticity about the recording that she was saying and the defendant was saying, so I'm going to overrule your objection.  It's already in evidence.  He may publish it. |
| [The State]: | At the risk of being redundant, just for purposes of the record, should there be an appeal, the State would also like to play in reference to closing argument to contradict the length of time the defense said the conversation went on, regardless of the statements provided and already admitted pieces of evidence.  He could use it in closing arguments to show that at least the defendant was telling some untruths. |
| [Defense counsel]: | Judge, the time has passed for cross-examination.  If Your Honor is going to allow it to come in, you are certainly entitled to make that ruling, Judge.  But with the |

| | added ruling that they be allowed to somehow now explain– |
|---|---|
| The Court: | It's already in evidence. It's State's Exhibit No. 2 that was admitted into evidence. It can be published at this point. |
| [Defense counsel]: | Our objection, Judge, is that publishing that without the translation is improper. |
| The Court: | Your objection is overruled. |

The jury convicted appellant of the offense of prostitution, and the trial court assessed punishment at ten days' confinement and a $500 fine.

## Admissibility of Spanish Audio Recording

Appellant argues, first, that the trial court erred by admitting the recording of his conversation with Officer Das, which was partly in English and partly in Spanish, because, under Texas Rule of Evidence 1009(a): (1) the State was required to give forty-five days' notice that it intended to use the recording as evidence at trial, and the State failed to do so, and (2) the State was required to submit a contemporaneous written English translation prepared by a qualified translator, which it also failed to do. We disagree.

### A. Standard of Review and Law Governing Foreign-Language Translations

We review a trial court's decision to admit evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse a trial court's evidentiary ruling unless it falls outside the zone of

8

reasonable disagreement. *Id.* We afford a trial court wide discretion in determining the adequacy of interpretive services. *Linton v. State*, 275 S.W.3d 493, 500 (Tex. Crim. App. 2009). The question on appeal is not whether the "best" means of interpretive services were employed but whether the services employed were constitutionally adequate. *Id.* The translation must be "accurate or 'true,' but it need not be perfect." *Flores v. State*, 299 S.W.3d 843, 855 (Tex. App.—El Paso 2009, pet. ref'd) (quoting *Linton*, 275 S.W.3d at 501–02); *see also Peralta v. State*, 338 S.W.3d 598, 604 (Tex. App.—El Paso 2010, no pet.) (holding same).

## B.    Failure to Provide Forty-Five Days' Notice of Intent to Use Audio Recording and Written Translation by Certified Translator

Texas Rule of Evidence 1009(a) ("Translation of Foreign Language Documents") governs the admissibility of translated documents. It provides,

> A translation of foreign language documents shall be admissible upon the affidavit of a qualified translator setting forth the qualifications of the translator and certifying that the translation is fair and accurate. Such affidavit, along with the translation and the underlying foreign language documents, shall be served upon all parties at least 45 days prior to the date of trial.

TEX. R. EVID. 1009(a). Rule 1009(a) applies when a party offers a written translation of a foreign language document. It requires that the written translation be coupled with an affidavit by a qualified translator setting forth the translator's

9

qualifications and certifying that the translation is fair and accurate and that the translation be provided forty-five days in advance of trial. *Id.*

Rule 1009 also provides, however, that submission of a written translation of a foreign language document by a qualified translator forty-five days in advance of trial in compliance with subsection 1009(a) is not the only means by which a party may offer a translation of a document. Subsection 1009(e) allows the trial court to admit a translation of a foreign language document "at trial either by live testimony or by deposition testimony of a qualified expert translator." TEX. R. EVID. 1009(e); *see Peralta*, 338 S.W.3d at 606 ("In the event the time requirements of subsection (a) [of rule 1009] are not met, a party may nevertheless introduce the translation at trial either by live testimony or by deposition testimony of a qualified expert translator.").

### 1. Forty-Five Days' Notice Requirement for Admissibility

Appellant argues first that the recording was inadmissible because he was not given forty-five days' notice of the State's intent to introduce the recording, as required by subsection 1009(a). However, Rule 1009(a)'s forty-five day notice requirement does not apply to the admission of the underlying recording of appellant's conversation with Officer Das. The requirement applies only to the admission of the translation of the recording, and it applies to admission of the translation only if that translation was not admissible under another subsection of

10

Rule 1009—here, subsection 1009(e). Rule 1009(e) does not require the contemporaneous admission of a written transcript of the exhibit being translated through live testimony; and it does not require forty-five days' notice. *See Peralta*, 338 S.W.3d at 606. It requires only that the translation be offered by live testimony or by the deposition of a certified expert translator. TEX. R. EVID. 1009(e). Thus, the fact that the State did not submit a written translation and affidavit of a qualified translator to appellant forty-five days before trial does not preclude admission of the recording.

We observe, moreover, that, although appellant raised the failure of the State to provide forty-five days' notice of a written translation in his motion in limine, he did not reassert this specific objection at trial. As the State points out, "[i]t is axiomatic that motions in limine do not preserve error." *Thierry v. State*, 288 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd) ("Even if there has been a violation of the order on the motion in limine, it is incumbent that a party object to the admission or exclusion of evidence or other action in order to preserve error for appeal."); *see also Williams v. State*, 402 S.W.3d 425, 437 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("The appellate complaint must comport with the specific objection made at trial. An objection stating one legal theory may not be used to support a different legal theory on appeal.") (internal citations

omitted).  We also note that, had appellant been concerned about the lack of time to counter the translation, Rule 1009(f) provides that the trial court, "upon motion of any party and for good cause shown, may enlarge or shorten the time limits set forth in this Rule." *See* TEX. R. EVID. 1009(f).

Finally, to the extent appellant contends that because he did not receive forty-five days' notice that the State intended to offer the recording he was unable to request that the trial court appoint an interpreter pursuant to Code of Criminal Procedure article 38.30, we note that nothing in article 38.30 precludes a party from requesting the appointment of an interpreter whenever the need arises during the proceeding.  Instead, article 38.30(a) expressly provides, "When a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, . . . an interpreter must be sworn to interpret for the person charged or the witness."  TEX. CODE CRIM. PROC. ANN. art. 38.30(a) (Vernon Supp. 2013); *see also Leal v. State*, 782 S.W.2d 844, 849 (Tex. Crim. App. 1989) (stating that situation in which recording of conversation in foreign language is offered is "analogous to one where a non-English speaking witness testifies, and the safeguards of Art. 38.30 apply").  Upon learning that the State intended to offer the recording into evidence, defense counsel could have requested that the trial court appoint an interpreter to translate the Spanish part of the recording into English and

that it grant extra time for the translation to be made. The record does not indicate that he made any such request.

### 2. *Written Translation Requirement for Admissibility*

Appellant also argues that the State was required to produce a contemporaneous written translation of a foreign language recording in order for the recording itself to be admissible. Appellant did not cite any authority for his claim; nor have we found any. The text of Rule 1009, which, as we have held, does not affect admissibility of the underlying recording, but only of the translation, does not require a written transcript when the interpreter translates the recording during live testimony at trial. *See* TEX. R. EVID. 1009(e); *cf. Leal*, 782 S.W.2d at 849–50 (holding that trial court erroneously admitted unsworn translation of Spanish conversation but not addressing whether contemporaneous written transcript was required if interpreter translated conversation during live testimony); *Peralta*, 338 S.W.3d at 606 (upholding admission of videotaped confession in Spanish when English translation was accompanied by affidavit from interpreter and noting that Rule 1009(e) allows introduction of translation by live testimony at trial).

Moreover, appellant did not move for the appointment of a licensed court interpreter to make a written transcription of the recording at trial or before trial, although he was permitted to do so by Rule 1009(g) and by the Texas Government

13

Code. *See* TEX. R. EVID. 1009(g) ("The court, if necessary, may appoint a qualified translator, the reasonable value of whose services shall be taxed as court costs."); TEX. GOV'T CODE ANN. § 57.002(a) (Vernon Supp. 2013) (requiring appointment of licensed court interpreter on motion of party).

Here, it is undisputed that the State did not provide to appellant and did not introduce into evidence a written English translation of the recorded conversation in mixed Spanish and English between appellant and Officer Das. Because no written English transcription of the audio recording was offered translating the Spanish on the recording into English, no affidavit from a qualified translator as to the authenticity of the translation was required. *See* TEX. R. EVID. 1009(a).

Instead, Officer Das translated portions of the conversation that she had with appellant during her live testimony at trial and was subjected to cross-examination about her testimony. Proceeding in this manner does not render the recording of the conversation inadmissible. *See* TEX. R. EVID. 1009(e); *Peralta*, 338 S.W.3d at 606.

Moreover, although appellant objected at the time the State offered the recording, he objected solely on the ground that "any audio that is admitted into evidence without the proper certified interpreter" would violate the rules of evidence. The trial court asked the State to clarify whether it was offering a written transcript of the recording. After the State replied that it was not, the trial

14

court overruled appellant's objection. Appellant did not object to the lack of a written transcript until closing argument, when the State requested to publish the recording to the jury. This late objection was insufficient to preserve error. *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (stating that "the objection must be made at the earliest possible opportunity" to preserve error); *Bessey v. State*, 199 S.W.3d 546, 555 (Tex. App.—Texarkana 2006) (holding same), *aff'd*, 239 S.W.3d 809 (Tex. Crim. App. 2007). But, even if the issue had been preserved, Officer Das' translation of the Spanish portion of the recording in her live testimony at trial would not be inadmissible.

### 3. *Officer Das' Qualifications to Interpret*

Finally, appellant argues that the trial court's admission of the audio recording was erroneous because the State failed to demonstrate that Officer Das was a certified translator and capable of accurately translating the recording for the jury.

As we have already pointed out, although appellant objected both to the admission of the recording and to Officer Das' testimony on the basis that no certified interpreter had translated the recording, appellant did not object with specificity to the accuracy of any part of Officer Das' translation. *See* TEX. R. EVID. 103(a) (providing, in relevant part, that error may not be predicated upon trial court ruling admitting evidence unless substantial right of party is affected and

15

timely objection "stating the specific ground of objection" appears of record). Rule of Evidence 1009(b) provides that "[a]ny party may object to the accuracy of another party's translation by pointing out the specific inaccuracies of the translation and by stating with specificity what the objecting party contends is a fair and accurate translation." TEX. R. EVID. 1009(b).

Appellant cross-examined Officer Das, but he did not challenge her translation of the Spanish spoken in the conversation. Aside from questioning on appeal whether Officer Das "could provide a fair and unbiased translation," appellant did not bring any specific errors in her translation of the recording to the attention of the trial court, nor has he brought any specific errors to our attention. *See* TEX. R. EVID. 1009(b); *Montoya v. State*, 811 S.W.2d at 673 ("The trial court was not under a duty to interrogate the interpreter to determine his qualifications; . . . . Appellant has not directed this court to any part of the record where alleged errors in translation occurred which prevented him from confronting the witnesses."). Nor did appellant "stat[e] with specificity what [he] contends is a fair and accurate translation." TEX. R. EVID. 1009(b). Moreover, appellant did not move for the appointment of a certified interpreter, even though he was entitled to do so. *See* TEX. R. EVID. 1009(g) (permitting court to appoint qualified translator "if necessary"); TEX. GOV'T CODE ANN. § 57.002(a) ("A court shall appoint a certified court interpreter or . . . a licensed court interpreter for an individual

16

who . . . does not comprehend or communicate in English if a motion for the appointment of an interpreter . . . is filed by a party . . . in a civil or criminal proceeding in the court.").

Furthermore, under its plain language, Rule 1009(e) provides for "the admission of a translation of foreign language documents at trial either by live testimony *or* by deposition testimony of a qualified expert translator." TEX. R. EVID. 1009(e) (emphasis added). Thus, the fact that a conversation was in a foreign language does not, in and of itself, render an audio recording of that conversation inadmissible. *See Leal*, 782 S.W.2d at 849. Nor does the fact that a translation of a recording is made by the live testimony of a witness who is not a qualified expert, rather than by the deposition testimony of a qualified expert, render the testimony inadmissible. Instead, the situation is analogous to one in which a non-English-speaking witness testifies, and, in that circumstance, the safeguards of Code of Criminal Procedure article 38.30 apply. *See id.*

Article 38.30 ("Interpreter") provides, in relevant part,

When a motion for appointment of an interpreter is filed by any party . . . , an interpreter must be sworn to interpret for the person charged or the witness. *Any person may be subpoenaed, attached or recognized in any criminal action or proceeding*, to appear before the proper judge or court *to act as interpreter therein, under the same rules and penalties as are provided for witnesses*. In the event that the only available interpreter is not considered to possess adequate interpreting skills for the particular situation or the interpreter is not familiar with the use of slang, the person charged or witness may be permitted by the court to nominate another person to act as

17

intermediary between the person charged or witness and the appointed interpreter during the proceedings.

TEX. CODE CRIM. PROC. ANN. art. 38.30(a) (emphasis added). The El Paso Court of Appeals has held that when "the interpreter was positively identified, qualified, officially sworn, and subjected to cross-examination, the requirements of Texas Code of Criminal Procedure, Article 38.30 [are] met." *Peralta*, 338 S.W.3d at 605 (citing *Flores*, 299 S.W.3d at 856).

Neither article 38.30 nor Rule 1009 requires an interpreter to be "certified" or "licensed" in order to provide an admissible translation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.30(a); TEX. R. EVID. 1009. Individuals called upon to act as interpreters during criminal proceedings are not required to have specific qualifications or training; instead, what is required is "sufficient skill in translating and familiarity with the use of slang." *Kan v. State*, 4 S.W.3d 38, 41 (Tex. App.—San Antonio 1999, pet. ref'd); *see also Leal*, 782 S.W.2d at 849 (holding that, pursuant to article 38.30, interpreter must "possess adequate interpreting skills for the particular situation" and must be "familiar with the use of slang"); *Mendiola v. State*, 924 S.W.2d 157, 161 (Tex. App.—Corpus Christi 1995, pet. ref'd) (holding that article 38.30 does not require interpreter to be "official" or "certified" interpreter). The competency of an individual to act as an interpreter is a question for the trial court, and, absent an abuse of discretion, this determination will not be disturbed on appeal. *See Kan*, 4 S.W.3d at 41; *see also Linton*, 275 S.W.3d at 500

18

(holding that trial court has "wide discretion in determining the adequacy of interpretive services"); *Montoya v. State*, 811 S.W.2d 671, 673 (Tex. App.—Corpus Christi 1991, no pet.) ("[C]ompetency is a question for the court, and a ruling on this subject will be reversed only for an abuse of discretion.").

Here, the person who interpreted the Spanish part of the recording was Officer Das, who was also a participant in the recorded conversation. She was placed under oath and was subject to cross-examination on the contents of the recording. The remaining question, then, is whether she was a qualified interpreter of the Spanish part of the conversation. Officer Das testified that she is able to communicate with potential clients in Spanish when she works undercover as a prostitute. She testified that she converses with Spanish-speaking suspects "quite frequently" and that she has experience taking police reports in Spanish and questioning witnesses in Spanish. She stated that she has taken Spanish classes offered by HPD and that, like many defendants in prostitution cases, she speaks "street Spanish." She acknowledged that she is not fluent in Spanish, but she also stated that she feels comfortable speaking it and that she can "get [her] point across" and can understand what is being said to her.

We conclude that the trial court reasonably could have determined that Officer Das had "sufficient skill in translating" Spanish, possessed "adequate interpreting skills for the particular situation," and was "familiar with the use of

19

slang" in Spanish such that she could render an accurate English translation of the recording of her conversation with appellant.  *See Leal*, 782 S.W.2d at 849; *Kan*, 4 S.W.3d at 41.  We hold that the trial court did not abuse its discretion in implicitly determining that Officer Das was qualified to translate the recording and in admitting the recording.  *See Linton*, 275 S.W.3d at 500; *Kan*, 4 S.W.3d at 41.

Appellant has not demonstrated that the trial court's admission of the audio recording or the court's allowance of Officer Das' testimony was erroneous or has in any way affected his substantial rights, as necessary to establish reversible error on appeal.  *See* TEX. R. APP. P. 44.2(b).

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Massengale, concurring.

Publish.  TEX. R. APP. P. 47.2(b).

20